COURT OF APPEALS

EIGHTH DISTRICT OF
TEXAS

EL PASO, TEXAS

 

 


 
 
  
 STEVIE LEON STENSON,
  
                            
 Appellant,
  
 v.
  
 THE STATE OF TEXAS,
  
                            
 Appellee.
 
 
  
   '
     
   '
     
   '
     
   '
     
   '
     
  '
 
  
 
 
  
  
                   No. 08-11-00033-CR
  
 Appeal from the
  
 432nd
 District Court
  
 of Tarrant
 County, Texas
  
 (TC#1159084D)
  
 
 


 

 

                                                                  O
P I N I O N

Appellant, Stevie Leon Stenson, appeals his jury
convictions of sexual assault and burglary of a habitation with intent to
commit sexual assault.  By two issues,
Appellant contends that:  (1) the trial
court erred by failing to include a jury instruction on the voluntariness of
statements made by him to police; and (2) improper statements made by the State
during closing argument affected his substantial rights.  We affirm.

PROCEDURAL
BACKGROUND








Appellant was indicted for sexual assault
and burglary of a habitation with intent to commit sexual assault.  Appellant pleaded not guilty to the charges.  At trial, a suppression hearing was held
outside of the presence of the jury to determine the admissibility of
Appellant’s oral statements to police. 
The trial court denied Appellant’s motion to suppress and found the
statements admissible because they were freely and voluntarily made.  The jury found Appellant guilty as
indicted.  After finding that Appellant
had committed previous offenses, the trial court assessed punishment at life
imprisonment.  This appeal followed.

FACTUAL BACKGROUND

On the night of August 24, 2008, after
taking two sleeping pills, P.H. went to bed in her home in Fort Worth, Tarrant
County, Texas.  She was awakened later by
someone banging on the front door.  P.H.
testified that she opened the door and recognized Appellant from Heritage
Square, an assisted living center near her home where she went to eat dinner
sometimes.  Appellant asked if he could
come inside, to which P.H. responded no and then she went back to sleep.

According to P.H., Appellant returned later and
entered her home through her bedroom window. 
She testified that Appellant held her down by her arms, took off her
shorts and underwear, and sexually assaulted her without her consent.  During the assault, P.H. received a call from
her former roommate which she answered and told him that she could not speak to
him at that time.  P.H. testified that
she was afraid of Appellant because she did not know what he would do.  After Appellant left, P.H. called her former
roommate and told him that she had been raped; he told her to call the
police.  P.H. called the police and then
an ambulance.  Officer Matt Collingsworth
went to the hospital to make contact with P.H. 
When Officer Collingsworth met P.H., she was upset and angry.  P.H. gave Officer Collingsworth a description
of her assailant and a first name.  Officer
Collingsworth obtained P.H.’s consent to search her residence.  While at the hospital, P.H. also gave a
written statement to Detective Kerry Adcock from the Fort Worth Police
Department’s Special Victims Unit.  After
the interview, Detective Adcock went to the crime scene and then went to
Heritage Square to try to identify the man P.H. had described as her assailant.

Detective Adcock testified that he found a
person matching P.H’s description at Heritage Square and spoke to him
there.  In court, Detective Adcock
identified Appellant as the person he met with at Heritage Square.  Detective Adcock informed Appellant that he
was investigating a sexual assault and that his name and likeness had come
up.  According to Detective Adcock’s
testimony, he asked Appellant if he would talk to him, to which he agreed.  Appellant was advised that he was not under
arrest and that he was free to leave. 
Detective Adcock asked Appellant if he knew the victim and Appellant
responded that he knew her and had seen her both at Heritage Square and at her
house as he had walked by there. 
Detective Adcock then asked Appellant if he had ever been to P.H.’s
house, if he’d ever touched her house, and if he had ever had sex with
P.H.  Appellant answered no to each
question.  Following this, Detective
Adcock asked Appellant if he would be willing to give him a sample of his DNA
which Appellant voluntarily agreed to do. 
Detective Adcock then took a buccal swab from Appellant.  Appellant was not arrested at this time.

At P.H.’s residence, Officer Kenneth
Robertson testified that there were five windows on the west side of the
residence and that four of the five window screens had been removed and placed
on the ground.  Officer Robertson
attempted to lift fingerprints from the window screens and inside the
residence.  Appellant’s fingerprints were
found on four window screens of P.H’s residence.

At the hospital, P.H. was examined by Betsy
Peters, a sexual-assault nurse examiner. 
During the exam, Peters noted that P.H. had bruising on her upper arms
and injury to her vaginal and hymen area. 
Peters testified that the bruising and injuries were consistent with the
history of sexual assault provided by the victim.  Peters collected DNA swabs from P.H.’s pelvic
area.  A serologist from the DPS crime
laboratory in Fort Worth testified that the DNA swabs taken from P.H. tested
positive for sperm.  A forensic DNA
analysis of the vaginal swab taken from P.H. and the buccal swab taken from
Appellant showed that Appellant could not be excluded as a contributor to the
mixed DNA found in P.H.’s vaginal swab.

DISCUSSION

Jury Instruction on Voluntariness

In Issue One, Appellant contends the trial
court committed reversible error by failing to give the jury an instruction on
the voluntariness of his oral statements to police pursuant to Article 38.22, §
6 of the Texas Code of Criminal Procedure. 
Tex. Code Crim. Proc. Ann.
art. 38.22, § 6 (West 2005).  Appellant
acknowledges that no jury instruction was requested, but argues that because the
requirements under Article 38.22, section 6 were satisfied, the missing jury
instruction was error and he suffered egregious harm as a result.  The State responds that no jury instruction
on voluntariness was required in this case. 
Because the statements made by Appellant were non-custodial, there is no
evidence raising a question of involuntariness, and because defense counsel’s
argument is not evidence, no error exists.

Standard of Review & Applicable Law

When a claim of jury-charge error is made we
first determine whether error occurred.  Sakil v. State, 287 S.W.3d 23, 25 (Tex.
Crim. App. 2009).  If error occurred, we
next determine whether sufficient harm exists to require reversal.  Id.
at 25-26.  If the defendant failed to
request a jury instruction, we review the omission of the instruction under Almanza’s egregious harm standard.  Oursbourn
v. State, 259 S.W.3d 159, 182 (Tex. Crim. App. 2008), citing Ellison v. State, 86 S.W.3d 226, 228 (Tex. Crim. App. 2002);
see also Almanza v. State, 686 S.W.2d
157, 171 (Tex. Crim. App. 1985).

Article 38.22, section 6 pertains to the
admissibility of an accused’s custodial and non-custodial statements and
provides that only voluntary statements are admissible at trial.  Tex.
Code Crim. Proc. Ann. art. 38.22, § 6 (West 2005); see Oursbourn, 259 S.W.3d at 171.  The trial court is required to give a general
voluntariness instruction to the jury if there is evidence raising the issue of
voluntariness of an accused’s statement under Article 38.22, section 6, even if
an instruction is not specifically requested. 
Oursbourn, 259 S.W.3d at
175-76.  When a question is raised and
litigated about the voluntariness of a statement made by the accused, Article
38.22, section 6 requires a trial court to:  (1) independently determine that the statement
was made under voluntary conditions; and then (2) instruct the jury that they
shall not consider the statement for any purpose unless they believe, beyond a
reasonable doubt, that the statement was voluntary.  Id.
at 180-81.  A complaint under Article
38.22, section 6 proceeds as follows:  (1)
a party notifies the trial court about the issue of voluntariness of the
statement or the trial court raises it sua
sponte; (2) a hearing is held outside the presence of the jury; (3) the
trial court determines whether the confession was voluntary and issues written
findings of fact and conclusions of law supporting the ruling; (4) if the
confession is found to be voluntary, it is admissible, and a party can offer
evidence contesting voluntariness; (5) if such evidence is offered before the
jury, the trial court must give a voluntariness instruction to the jury.  Id.
at 175.  However, a jury instruction on
voluntariness is required only if the evidence produced at trial would allow a
reasonable jury to conclude that the statement was involuntary.  Vasquez
v. State, 225 S.W.3d 541, 544 (Tex. Crim. App. 2007); see also Oursbourn, 259
S.W.3d at 174 (no error occurs if a trial court refuses to include a jury
instruction on the voluntariness under Article 38.22 when there is no evidence that
raises the issue of voluntariness).

Here, the record does not indicate that Appellant
presented any evidence from which a reasonable jury could find that the statements
Appellant made to Detective Adcock were involuntary.  The voluntariness question was raised outside
the jury’s presence and as such, no jury instruction is required.  See Oursbourn,
259 S.W.3d at 175; Vasquez, 225
S.W.3d at 545-46.  Accordingly, we hold
that the trial court did not err in failing to instruct the jury on the
voluntariness of Appellant’s statements. 
Issue One is overruled.

Improper Jury Argument

In Issue Two, Appellant asserts that three improper
remarks made by the prosecution during closing argument affected his
substantial rights.  Specifically, he
contends the prosecutor’s closing argument mischaracterized Appellant’s closing
in such a way that it inflamed and prejudiced the jury against him, it struck
at him over the shoulders of defense counsel, and invaded the province of the
jury by asserting that a guilty verdict was a foregone conclusion.  We address each complaint separately.

Standard of Review & Applicable Law

We review a trial court’s ruling on an
objection to a jury argument for an abuse of discretion.   York
v. State, 258 S.W.3d 712, 717 (Tex. App. – Waco 2008, pet. ref’d).  Generally, proper jury argument falls into
one of four areas:  (1) summation of the
evidence; (2) reasonable deduction from the evidence; (3) an answer to the
opposing counsel’s argument; or (4) a plea for law enforcement.  Berry
v. State, 233 S.W.3d 847, 859 (Tex. Crim. App. 2007); Underwood v. State, 176 S.W.3d 635, 639 (Tex. App. – El Paso 2005,
pet. ref’d).  A trial court has broad
discretion in controlling the scope of closing argument.  Lemos
v. State, 130 S.W.3d 888, 892 (Tex. App. – El Paso 2004, no pet.).  When determining whether a party’s argument
fits into one of these areas, we consider the argument in light of the record
as a whole.  Rodriguez v. State, 90 S.W.3d 340, 364 (Tex. App. – El Paso 2001,
pet. ref’d).

Generally, improper jury argument can be
cured by an instruction to disregard unless “‘in light of the record as a whole
it was extreme or manifestly improper, violative of a mandatory statute, or
injected new facts harmful to the accused.’” 
Hawkins v. State, 135 S.W.3d
72, 75 (Tex. Crim. App. 2004), citing Cooks
v. State, 844 S.W.2d 697, 727 (Tex. Crim. App. 1992), cert. denied, 509 U.S. 927, 113 S.Ct. 3048, 125 L.Ed.2d 732 (1993).  We also consider whether Appellant’s
substantial rights were harmed by the State’s improper argument.  See Casey
v. State, 215 S.W.3d 870, 885 (Tex. Crim. App. 2007).  When an error has a substantial and injurious
effect or influence on the jury’s verdict an appellant’s substantial rights are
affected.  Id.

When closing argument exceeds the
permissible bounds of the proper areas, reversible error only exists if, in
light of the entire record, the argument is extreme or manifestly improper,
violates a mandatory statute, or injects new facts harmful to the accused into
the trial proceeding.  Wesbrook v. State, 29 S.W.3d 103, 115
(Tex. Crim. App. 2000).  To rise to this
level, the remarks must show a willful and calculated effort on the part of the
State to deprive Appellant of a fair and impartial trial.  Id.

Preservation of Error

Appellant first complains that the following
closing remarks made by the prosecutor mischaracterized defense counsel’s
argument:

The State:  I want y’all to understand what he just
said.  She doesn’t matter.  She’s a member of our society who does not
matter because we don’t approve of her lifestyle.  That’s what he just said.  I want you to understand that, that because
of where she lives—

 

Defense Counsel:  I’m going to object to that
characterization.  That’s not what I
said, Judge, and it’s not what I meant. 
It’s a mischaracterization of my argument.

The Court:  Ladies and gentlemen, just remember the
Court’s previous instruction that the arguments of the respective counsel are
supposed to help you in identifying evidence that might otherwise escape your
attention.  What they say is not evidence.
 You may continue.

The State responds that Appellant did not preserve his
complaint for review because he failed to obtain an adverse ruling on his
objection.  We agree.

In order to preserve error, a party must
make a timely and specific objection when improper evidence or argument is
presented.   Tex. R. App. P. 33.1. 
To preserve error regarding improper jury argument, a defendant
ordinarily should (1) contemporaneously object to the statement; (2) request an
instruction that the jury disregard the statement if the judgment is sustained;
and (3) move for a mistrial if the instruction is granted.  Cooks v.
State, 844 S.W.2d 697, 727-28 (Tex. Crim. App. 1992), cert. denied, 509 U.S. 927, 113 S.Ct. 3048, 125 L.Ed.2d 732 (1993).  Accordingly, in order for an improper jury
argument error to be preserved, a party must assert a timely and specific
objection to the argument and pursue the objection to an adverse ruling.  Mathis
v. State, 67 S.W.3d 918, 926-27 (Tex. Crim. App. 2002); Ramirez v. State, 815 S.W.2d 636, 643
(Tex. Crim. App. 1991) (error is waived if it is not clear from the record that
the trial court made an adverse ruling on the defendant’s objection).

After Appellant objected that the prosecutor
mischaracterized his argument, the trial court reminded the jury that closing
arguments were meant to aid them in identifying evidence and instructed the
jury that the State’s argument was not evidence.  Although Appellant asserted a timely
objection, Appellant acknowledges that the trial court did not rule on his
first objection.  In this case, the trial
court’s instructions to the jury after Appellant objected on the grounds of
mischaracterization did not constitute an adverse ruling.  See Avendano
v. State, No. 08-06-00072-CR, 2008 WL 2967012, at *3 (Tex. App. – El Paso July
31, 2008, no pet.) (not designated for publication) (argument on appeal waived
where appellant failed to obtain adverse ruling to his objection on State’s
argument); Carrera v. State, No.
08-05-00264-CR, 2007 WL 766126, at *4 (Tex. App. – El Paso March 15, 2007, no
pet.) (not designated for publication) (a trial court’s non-specific comment
that “the jury would remember the evidence” does not constitute an adverse
ruling on an objection to jury argument). 
Consequently, Appellant failed to preserve error with respect to his
objection that the State’s mischaracterized Appellant’s closing argument.  Mathis,
67 S.W.3d at 926-27.

Striking Appellant over the Shoulders of
Defense Counsel

Next, Appellant argues that the State
improperly struck Appellant over the shoulders of defense counsel.  Specifically, Appellant asserts that the
State personally attacked and impugned defense counsel’s character by remarking
that the victim was chosen because defense counsel could make the jury
disregard a victim like her.  The State
responds that the prosecutor was not attempting to impugn Appellant’s counsel
by suggesting counsel aided in Appellant’s selection of a victim; instead it
claims the prosecutor was trying to explain to the jury that Appellant selected
P.H. as his victim because:  (1) he knew
her; (2) she lived in an unsecure home in a crime-ridden area; (3) she was poor
and, as such, society would not see her as credible; and (4) Appellant knew a
skilled attorney could destroy the credibility of such a victim.  For these reasons, the State argues that the
prosecutor’s argument was a reasonable deduction from the evidence and not an
impermissible strike at Appellant over the shoulders of defense counsel.  The argument and exchange occurred as
follows:

The State: 
She’s not worked a day in her life, she’s been drifting all this time,
she lives in a high-crime neighborhood. 
What does that imply to you? 
She’s a part of our population. 
Our community does not matter.

She’s not worthy of being a
victim.  We should have a separate
justice system for her.  We tried that
once.  It don’t work.  Justice is blind.  Everybody can be a victim.

And don’t you think that when this
Defendant—and he told the detective that he knew where she lived, that he
picked her for a reason.  Why?  Because Terry’s a good lawyer, and everybody
knows if you pick a victim that nobody cares about, nothing’s going to
happen.  Why?

Defense Counsel:  I have to object to that, Judge.  What do I have to do with him picking
somebody?  I’m going to object that it’s
striking my client over the shoulder of Counsel.

The Court:  Sustained.

After sustaining the objection, the
trial court instructed the jury to disregard the last comment and denied Appellant’s
motion for mistrial.

When the trial court sustains an objection,
instructs the jury to disregard, and denies the mistrial, the issue on appeal
is whether the trial court abused its discretion by denying the motion for
mistrial.  Hawkins, 135 S.W.3d at 79. 
We review a trial court’s denial of a motion for mistrial for an abuse
of discretion.  Id. at 76-77.  A mistrial is an extreme remedy for
conduct that is so prejudicial that expenditure of further time and expense
would be futile.  Id. at 77.  Only in dire
circumstances, where the prejudice is incurable, will a mistrial be
required.  Id.  In most cases, an instruction to disregard
will cure the prejudicial effect.  Wesbrook, 29 S.W.3d at 115-16;  Wilson
v. State, 7 S.W.3d 136, 148 (Tex. Crim. App. 1999) (when an argument that
strikes over the shoulder of defense counsel is not particularly egregious, a
trial court’s instruction to disregard will usually cure the error).

In reviewing a trial court’s denial of a
motion for mistrial we look at the following factors to analyze any harm:  (1) the severity of the misconduct (the
magnitude of the prejudicial effect of the prosecutor’s remarks); (2) the
measures adopted to cure the misconduct (the efficacy of any cautionary
instruction by the trial judge); and (3) the certainty of conviction absent the
misconduct (the strength of the evidence supporting the conviction).  Hawkins,
135 S.W.3d at 77; Mosley v. State,
983 S.W.2d 249, 259 (Tex. Crim. App. 1998); Newby
v. State, 252 S.W.3d 431, 438 (Tex. App. – Houston [14th Dist.] 2008, pet.
ref’d).

Here, the comments made by the prosecutor
referencing Appellant’s counsel at trial, were not particularly egregious.  Looking at the entire record, we
discern no abuse of discretion on the part of the trial court in its denial of
Appellant’s motion for mistrial.  Hawkins, 135 S.W.3d at 85.  The trial court could have reasonably
concluded that:  (1) the State’s argument
was only mildly improper; (2) the court’s instruction to disregard would cure
any error; and
(3) Appellant’s conviction was likely absent the improper argument.  Therefore, the trial court could have
reasonably concluded that a mistrial was not required.

Invading the Province of the Jury

Lastly, Appellant complains that the
prosecutor invaded the province of the jury by asserting that a guilty verdict was
a foregone conclusion and that these remarks fall outside the areas of
permissible argument.  The State responds
that the prosecutor’s remarks were proper because they constituted both a
reasonable deduction from the evidence and a plea for law enforcement.  Appellant challenges the following argument:

The State: 
I’m asking you to do what is right. 
I told you during voir dire there’s one thing that’s never really talked
about in trials, and it’s not in this court anywhere in here, the
instructions.  He has a right to a jury
trial.  We have a right to a jury trial.  We have a right to bring cases to you so you
can decide them, and that’s what happened here.

This evidence is overwhelming.  Absolutely overwhelming.  The only question is punishment.  There’s never been a question about
guilt/innocence.  And the Judge is going
to make that decision.  Find him guilty.

Defense Counsel:  Judge, I object to that, there’s never been
any question, the Judge is going to decide punishment; that presupposes the
verdict of the jury.  We’re going to
object to that.

The Court:  Ladies and gentleman, you’re ultimately the
finders of fact whether the Defendant is guilty or not.

Overruled.

The State: 
So what kind of community do you want to live in?  Do people like her matter?  If you believe so, then you say guilty on
both counts.

Assuming the complained-of comment was
improper, we cannot conclude that it was a willful, calculated effort on the
part of the prosecutor to deprive Appellant of his substantial rights.  See Wesbrook,
29 S.W.3d at 115; see also Cantu v. State,
939 S.W.2d 627, 633 (Tex. Crim. App. 1997).
 The prosecutor’s argument was not
extreme or manifestly improper nor did it inject new, harmful facts into the
proceeding.  Wesbrook, 29 S.W.3d at 115.  The prosecutor’s remarks merely expressed
that the overwhelming evidence supported convicting Appellant of the charged
offense and asked that the jury find Appellant guilty.  Moreover, in light of the record as a whole,
we cannot conclude that there is a reasonable probability that the
prosecution’s argument contributed to the jury’s conviction of Appellant.  Rodriguez,
90 S.W.3d at 364; Wilson v. State,
938 S.W.2d 57, 61 (Tex. Crim. App. 1996) (the standard is whether, in light of
the entire record, there is a reasonable possibility the improper argument may
have contributed to appellant’s conviction). 
Accordingly, we find that the argument made by the prosecutor during
closing argument did not violate Appellant’s substantial rights and there was no
abuse of discretion on the part of the trial court.  Casey,
215 S.W.3d at 885; York, 258 S.W.3d at
717; Hawkins,
135 S.W.3d at 76-77.  Issue Two is
overruled.

CONCLUSION

Having overruled both of
Appellant’s issues, we affirm the trial court’s judgment.

 

                                                                        GUADALUPE
RIVERA, Justice

August 15, 2012

 

Before McClure, C.J., Rivera, J., and Antcliff, J.

 

(Do Not Publish)